UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MARGOTS KAPACS, | Case No.18-CV-3089 (NEB/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| JESSICA BRUNSELL; MATTHEW R. ZAHN; and BRIX REAL ESTATE, | |
| Defendants. | |

"Time and time again, [plaintiff] Margots Kapacs has attempted to contest in federal court, by one way or another, the outcome of his state-court divorce proceedings." *Jurevica v. Kapacs*, No. 18-CV-1684 (WMW/HB), 2018 WL 4190068, at *1 (D. Minn. June 26, 2018), *Report and Recommendation adopted*, 2018 WL 4181611 (D. Minn. Aug. 31, 2018). Not three months after the rejection of Kapacs's most recent attempt, which resulted in a remand to Hennepin County district court, *see id*., Kapacs now returns to federal court, this time bringing claims related to the transfer of possession and planned sale of real estate owned by him pursuant to an order entered in the divorce proceedings.

This matter is before the Court on review of Kapacs's application to proceed *in forma pauperis* ("IFP"). *See* ECF No. 3. After review of the IFP application and other materials submitted by Kapacs, this Court concludes that Kapacs has not demonstrated his financial eligibility for IFP status. In any event, regardless of his financial eligibility,

1

Kapacs has not pleaded a viable claim for relief over which this Court has original jurisdiction, and this matter should be dismissed on that basis. Finally, in light of Kapacs's history of pursuing non-meritorious federal litigation related to his divorce, it is recommended that filing restrictions now be imposed upon Kapacs in this District.

## I.  IFP APPLICATION

"The central question" in determining if a litigant qualifies financially for IFP status "is whether the movant can afford the costs of proceeding without undue hardship or deprivation of the necessities of life." *Ayers v. Texas Dep't of Criminal Justice*, 70 F.3d 1268, 1268 (5th Cir. 1995) (per curiam). This Court concludes that Kapacs has not shown that payment of the filing fee in this matter would amount to an undue hardship.

Kapacs's IFP application paints a bleak picture of his pecuniary status. According to that document, Kapacs has earned an average of $969 per month over the past 12 months, and he expects to earn the same amount next month. *See* ECF No. 3 at 1-2. The IFP application states that Kapacs owns no assets whatsoever — no real estate, motor vehicles, or even savings or checking accounts. If the information in the IFP application is accurate, then this Court would conclude without hesitation that Kapacs qualifies financially for IFP status.

But Kapacs's own pleading casts into doubt the veracity of the information provided in his IFP application. The gist of Kapacs's complaint is that the continuing possession of his real estate by the defendants — real estate, this Court notes, that is not listed on the IFP application as an asset owned by Kapacs — has "unlawfully deprived [him] from rent income in [the] amount of $2,500 per month since the day it was broken

into . . . on Oct. 3, 2018." Compl. ¶ 7.  Kapacs offers no explanation as to why he could have expected $2,500 per month in income from this property in October 2018, yet had earned less than $1,000 per month during the 12 months prior to the start of this litigation, *see* ECF No. 2 at 1.  Kapacs also describes defendants as depriving him of $100,000 worth of personal property, *see* Compl. ¶ 6, despite not listing *any* personal property in his IFP application as being within his ownership, *see* ECF No. 2 at 3.

These discrepancies can perhaps be explained, but Kapacs has made no attempt at explaining them.[1]  Moreover, if the information in the complaint is correct — and pursuant to Rule 11(b)(2) of the Federal Rules of Civil Procedure, Kapacs has certified *under penalty of sanctions* that the factual contentions in his pleading will likely have evidentiary support — then Kapacs would likely not qualify financially for IFP status.

## II.  THE COMPLAINT

If this were the only problem with Kapacs's submission, this Court would order Kapacs to submit additional information regarding his financial status and, should Kapacs be unable to demonstrate financial eligibility for IFP status, afford Kapacs an opportunity to pay the required filing fee and proceed as a non-IFP litigant.  This rigamarole is

---

[1] Kapacs noted less than $1,400 in total monthly income in an IFP application filed less than five months ago, with less than $400 of that income per month ascribable to rental properties.  *See Kapacs v. Jurevica*, No. 18-CV-1684, ECF No. 2 at 1-2 (D. Minn. filed June 18, 2018).  Previous IFP applications submitted by Kapacs show him earning nothing in rental income from the property at issue in this lawsuit.  *See Kapacs v. Umhoefer*, No. 16-CV-2540 (PJS/BRT), ECF No. 2-1 at 1 (D. Minn. filed July 27, 2016).  Indeed, Kapacs previously attested before this Court that the city had revoked his rental license for the property in June 2015.  *See Kapacs v. City of Minneapolis*, No. 17-CV-2291, Affidavit of Margots Kapacs ¶ 6 (D. Minn. filed June 27, 2017).

needless here, though, because an IFP application will be denied, and an action will be dismissed, when an IFP applicant has filed a complaint that fails to state a cause of action on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); *Carter v. Schafer*, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[C]ontrary to plaintiffs' arguments on appeal, the provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service."). In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Kapacs alleges in his complaint that he has resided at the property at issue in this litigation since 2001. *See* Compl. ¶ 4.1. In an order dated September 25, 2018 that was

entered onto the Minnesota state-court docket on or about October 1, 2018,[2] defendant Jessica Brunsell "was assigned as a point of receiver" for the property, which was ordered sold by the state court. *Id.* ¶ 4.3, 4.5. Brunsell took possession of the property two days later to the exclusion of Kapacs, who has been denied access to the property since that time. Kapacs alleges that Brunsell has listed the property at a price far below market value in an effort to expediently dispose of the property to her own benefit. *See id.* ¶ 4.5. Based on those allegations, Kapacs brings claims under both state and federal law against Brunsell, the real-estate agency that employs Brunsell (defendant Brix Real Estate), and Brunsell's attorney (defendant Matthew R. Zahn).

### A.  Jurisdiction

Kapacs alleges that this Court has original jurisdiction over this litigation pursuant to both 28 U.S.C. § 1331 (federal-question jurisdiction) and 28 U.S.C. § 1332 (jurisdiction based on diversity of citizenship). This Court finds that Kapacs has not adequately alleged the presence of jurisdiction based on diversity of citizenship and therefore has not established the Court's original jurisdiction over the state-law causes of action.

Section 1332(a) provides

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between —

---

[2] In this and in all other respects, this Court relies upon the factual allegations set forth by Kapacs in the complaint and assumes those factual allegations to be correct. Kapacs has not provided a copy of the order discussed above.

> (1) citizens of different States;
>
> (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
>
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

Kapacs alleges that each of the defendants is a citizen of Minnesota, while he is "a citizen of the European Union" who has resided in the State of Minnesota since at least 2001 and continues to reside here. *See* Compl. ¶ 3, 4.1. By all appearances, then, this matter involves (on one side of the ledger) citizens of Minnesota, and (on the other side of the ledger) a citizen of a foreign state lawfully admitted for permanent residence in the United States and domiciled in Minnesota. Section 1332(a)(2) precludes original jurisdiction based on diversity of citizenship in such situations. As the pleader, Kapacs bears responsibility to affirmatively establish jurisdiction. *See* Fed. R. Civ. P. 8(a)(1). He has failed insofar as he contends that § 1332 provides a basis for original jurisdiction in this lawsuit.

This, by itself, does not deprive the Court of jurisdiction over this lawsuit, or even necessarily over the state-law claims. Kapacs also brings claims premised on violations

6

of federal law, and § 1331 provides a basis for original jurisdiction over those federal-law claims. The Court does lack *original* jurisdiction over the state-law claims, but "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). That said, the Eighth Circuit has instructed district courts to decline such supplemental jurisdiction where all claims over which the district court has original jurisdiction are dismissed prior to trial. *See Hervey v. County of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008); *accord* 28 U.S.C. § 1367(c)(3). Because, as explained below, this Court finds that Kapacs has not adequately pleaded any claim for relief under federal law, it is recommended that the Court decline supplemental jurisdiction over the state-law claims for relief and dismiss those claims on that basis.

### B. Federal-Law Claims

Along with his state-law claims, Kapacs seeks relief pursuant to four federal statutes: 18 U.S.C. § 1621; 18 U.S.C. § 1623; 42 U.S.C. § 1983; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. None of those claims is viable.

Section 1621 criminalizes perjury "in any case in which a law of the United States authorizes an oath to be administered." Leaving aside the fact that Kapacs has not adequately alleged how any of the defendants might have perjured themselves, § 1621 does not provide a private right of action. *See Faraldo v. Kessler*, No. 08-CV-0261 (SJF)

7

(ETB), 2008 WL 216608, at *6 (E.D.N.Y. Jan. 23, 2008) (collecting cases).  Obviously, then, Kapacs cannot proceed on civil claims under § 1621.

Much the same is true of Kapacs's claim under § 1623, which criminalizes perjury in the specific context of false declarations made before a court or jury of the United States.  Again, Kapacs has not adequately alleged how defendants have perjured themselves, and again, § 1623 is a criminal statute that does not provide a private right of action.  *See Faraldo*, 2008 WL 216608, at *6 (collecting cases).

Section 1983 provides a cause of action for alleged violations of federal constitutional or statutory rights by state actors and thus, unlike §§ 1621 or 1623, may properly be invoked by Kapacs in the context of civil litigation.  Nevertheless, his § 1983 claims also fail.  Kapacs has alleged *at most* that defendants have acted in violation of state law in conducting the repossession and attempted sale of his property.[3]  But "a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983."  *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993).  Kapacs does not adequately allege how defendants might have violated his *federal* constitutional rights.  Further, to the extent that the defendants are alleged to have acted either in the

---

[3] Even this appears dubious from the face of the pleading.  The premise of Kapacs's complaint is that Minnesota law permits transferred possession of a property within the context of divorce proceedings "upon demand by a receiver," Minn. Stat. § 576.40, subd. 1, and the receiver has not ordered a transfer of possession or sale of the property in his case, *see* Compl. ¶ 4.4.  Kapacs neglects to quote the rest of the statute, however, which provides that such a transfer may be effected by order of the court.  *See* Minn. Stat. § 576.40, subd. 1.  And Kapacs seems to admit elsewhere in the complaint that the transfer of property (and subsequent attempted sale) was in fact effected pursuant to court order.  *See* Compl. ¶ 4.5.

8

role of court-appointed receivers or as agents acting directly under the instruction of a receiver, they are absolutely immune from suit.[4]  *See Cassell v. County of Ramsey,* No. 15-2598 (PJS/JJK), 2015 WL 9590802, at *4 (D. Minn. Dec. 11, 2015) (quoting *Drexler v. Walters*, 290 F. Supp. 150, 154 (D. Minn. 1968)).

Finally, Kapacs hints near the conclusion of his complaint at the possibility of bringing claims under RICO.  *See* Compl. at 11.  But the defendants' activities described in the complaint, even if assumed to be unlawful, do not constitute "racketeering activity" as that term is defined by § 1961(1), much less a "pattern of racketeering activity" as defined by § 1961(5).  Nor is it clear from the complaint how defendants would constitute a RICO "enterprise" for purposes of § 1961(4).  Any RICO claims must therefore also fail.

### III.  CONCLUSION

For those reasons, this Court concludes that Kapacs has not pleaded a viable claim for relief under federal law.  Accordingly, it is recommended that those federal claims be dismissed without prejudice.  And, as explained above, because this Court lacks original

---

[4] The exact relationship between Brunsell and the state-court appointed receiver is unclear from the complaint.  But it would do Kapacs little good to show that Brunsell acted entirely independently of the receiver, because "a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).  Kapacs is thus faced with a dilemma.  If Brunsell acted at the direction of the receiver, it is hard to see why Brunsell should not be afforded the same absolute immunity as the receiver.  But if Brunsell acted unlawfully of her own accord, it is doubtful that the necessary "meeting of the minds" took place between her and a state actor.  *Id*.

9

jurisdiction over the state-law claims, it is recommended that those claims also be dismissed without prejudice.

Only two matters merit further comment:

First, Kapacs seeks preliminary injunctive relief through the halting of any sale of the property at issue. *See* ECF No. 2. "[A]n injunction cannot issue if there is no chance of success on the merits." *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005) (citations omitted). Because this Court has concluded that Kapacs has failed to plead a viable claim for relief over which this Court has original jurisdiction, it is further recommended that his motion for injunctive relief be denied.

Second, Kapacs was recently "warned that the right of access to the courts afforded to pro se litigants does not include an unrestricted opportunity to file frivolous, malicious, abusive, or repetitive lawsuits" and that "[i]t may at some point become necessary to restrict Kapacs's ability to initiate new litigation relating to his divorce proceedings in this District while unrepresented."[5] *Jurevica*, 2018 WL 4190068, at *2. The admonition was well-earned:

> In 2015, Kapacs sued his ex-wife, her lawyers, and the judges who presided over the divorce proceedings, asserting claims under 42 U.S.C. § 1983 and [RICO]. *See* Compl., *Kapacs v. Jurevica*, No. 15-cv-3019 (ADM/FLN) (D. Minn. filed Sept. 5, 2015). The case was dismissed, and the dismissal was summarily affirmed on appeal. *See Kapacs v. Jurevica*, 676 F. App'x 610 (8th Cir. 2017) (per curiam). Kapacs then set his sights on the law firm that represented him in the divorce

---

[5] The Minnesota Court of Appeals recently noted that Kapacs has been declared a frivolous litigant in state court and has been directed to post a $1,000 bond for each motion filed in the state district court. *See In re Margots Kapacs*, No. A18-1702, at *3 (Minn. Ct. App. Oct. 23, 2018).

> proceedings. *See* Compl., Kapacs v. Wolf Rohr Gemberling & Allen PA, No. 16-cv-2709 (PJS/FLN) (D. Minn. filed Aug. 11, 2016). That case was also dismissed, *Kapacs v. Wolf Rohr Gemberling & Allen PA*, No. 16-cv-2709 (PJS/FLN), slip op. at 1 (D. Minn. Nov. 16, 2016), and Kapacs did not appeal the judgment. Kapacs next sought, in essence, to appeal to this Court a post-decree order entered in the divorce proceedings, while also suing the Minnesota Board on Judicial Standards for rejecting his claims of judicial misconduct against the judge presiding over the divorce proceedings. *See* Compl., *Kapacs v. Minnesota*, No. 17-cv-3615 (WMW/HB) (D. Minn. filed August 8, 2017) [Doc. No. 1]. That matter was dismissed as well, *Kapacs v. Minnesota*, No. 17-cv-3615 (WMW/HB), 2017 WL 5565212, at *3 (D. Minn. Nov. 20, 2017), and the appeal was dismissed for lack of jurisdiction, *Kapacs v. Minnesota*, No. 17-cv-3615, slip op. at 1 (8th Cir. Mar. 23, 2018).

*Jurevica*, 2018 WL 4190068, at *1 (citations altered). The case from which the above is quoted was itself remanded to state court. Now, not three months after that remand, Kapacs again returns to federal court looking to challenge an aspect of his divorce proceedings. Once more, his attempt to relocate what is essentially ongoing state-court litigation into federal court is without merit.

Because Kapacs has proven unable to resist initiating vexatious, malicious, or otherwise non-meritorious litigation in federal court related to his divorce proceedings, this Court finds that it is now appropriate to restrict Kapacs from initiating new litigation related to those divorce proceedings while unrepresented without the prior approval of a federal judicial officer. Such a filing restriction will not preclude Kapacs from bringing colorable claims for federal relief, should such a claim arise. The restriction would, however, prevent Kapacs from initiating lawsuits such as this with no chance of success.

RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1. This action be DISMISSED WITHOUT PREJUDICE.

2. The application to proceed *in forma pauperis* of plaintiff Margots Kapacs [ECF No. 3] be DENIED.

3. Kapacs's motion for a temporary restraining order [ECF No. 2] be DENIED.

4. Kapacs be restricted from filing new civil actions in this District related to his divorce proceedings while unrepresented by counsel absent prior approval of a federal judicial officer.

Dated: November 6, 2018

*s/ Elizabeth Cowan Wright*
Elizabeth Cowan Wright
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).